UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

NO. _____

| | |
|---|---|
| PHARMACY CORPORATION OF AMERICA | ) |
| d/b/a PHARMERICA, | ) |
| a California corporation | ) |
|      PLAINTIFF | ) |
| v. | ) |
| | ) |
| BHI, L.L.C., a Florida limited liability company; | ) |
| LHI, L.L.C., a Florida limited liability company; | ) |
| CCHI, LLC, a Florida limited liability company; | ) |
| PHI, L.L.C., a Florida limited liability company | ) |
| MADISON HEALTH INVESTORS, L.C., | ) |
| a Florida limited liability company; | ) |
| LHI HEALTHCARE, LLC, | ) |
| a Florida limited liability company; | ) |
| PHI HEALTHCARE, LLC, | ) |
| a Florida limited liability company; | ) |
| MHI HEALTHCARE, LLC, | ) |
| a Florida limited liability company; | ) |
| CROSS CITY HOLDINGS, LLC, | ) |
| a Florida limited liability company; | ) |
| AGEMARK, LLC, | ) |
| a North Carolina limited liability company; | ) |
| THIRD STREET MANAGEMENT, LLC, | ) |
| a North Carolina limited liability company; | ) |
| DAVID S. JONES, individually; and | ) |
| CHARLES TREFZGER, individually. | ) |
| | ) |
|      DEFENDANTS. | ) |

---

# COMPLAINT

---

Plaintiff Pharmacy Corporation of America d/b/a PharMerica ("PharMerica"), by

counsel, states as follows for its Complaint against Defendants:

## NATURE OF THE ACTION

1.    This action arises out of Defendants' failure to pay PharMerica for pharmacy goods and services provided by PharMerica to the residents of five skilled nursing facilities owned, operated, or otherwise controlled by the Defendants.

## THE PARTIES AND VENUE

2.    PharMerica is a California corporation with its principal place of business in Louisville, KY.

3.    BHI, L.L.C. ("BHI") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.    Upon information and belief, none of BHI's members are citizens of California or Kentucky.

4.    LHI, L.L.C. ("LHI") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.    Upon information and belief, none of LHI's members are citizens of California or Kentucky.

5.    PHI, L.L.C. ("PHI") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.    Upon information and belief, none of PHI's members are citizens of California or Kentucky.

6.    CCHI, LLC ("CCHI") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.    Upon information and belief, none of CCHI's members are citizens of California or Kentucky.

7.    Madison Health Investors, L.C. ("Madison") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.    Upon information and belief, none of Madison's members are citizens of California or Kentucky.

8.     LHI Healthcare, LLC ("LHI Landlord") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.     Upon information and belief, none of LHI Landlord's members are citizens of California or Kentucky.

9.     PHI Healthcare, LLC ("PHI Landlord") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.     Upon information and belief, none of PHI Landlord's members are citizens of California or Kentucky.

10.     MHI Healthcare, LLC ("MHI Landlord") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.     Upon information and belief, none of MHI Landlord's members are citizens of California or Kentucky.

11.     Cross City Holdings, LLC ("CCHI Landlord") is a Florida limited liability company, with a principal office in Hickory, Catawba County, North Carolina.     Upon information and belief, none of CCHI Landlord's members are citizens of California or Kentucky.

12.     AgeMark, LLC ("AgeMark") is a North Carolina limited liability company, with a principal office in Hickory, Catawba County, North Carolina.  Upon information and belief, none of AgeMark's members are citizens of California or Kentucky.

13.     Third Street Management, LLC ("TSM") is a North Carolina limited liability company, with a principal office in Hickory, Catawba County, North Carolina.     Upon information and belief, none of TSM's members are citizens of California or Kentucky.

14.     David Jones is a citizen of North Carolina.

15.     Charles Trefzger is a citizen of North Carolina.

JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     The Court has personal jurisdiction over the Defendants, as the Defendants are citizens of this state or otherwise transact business in this state.

18.     Venue is proper in this Court, because Defendants reside in and conduct business in this judicial district.

**STATEMENT OF FACTS**

19.     PharMerica provides pharmacy goods and services to residents of long-term care and skilled nursing facilities as an "under arrangements provider" as that term is defined by federal law.

20.     While PharMerica bills third party payors for a number of goods and services provided to residents of skill nursing facilities, many goods and services it provides are covered by Medicare Part A.  PharMerica cannot bill Medicare Part A directly.

21.     As an under arrangements provider, PharMerica provides the goods and services to the Part A residents of the skilled nursing facility, and based on each resident's level of care, the skilled nursing facility is reimbursed by Medicare.  The reimbursement level takes into account the cost of the pharmacy goods and services for that resident, and said reimbursement almost universally exceeds the amount invoiced by PharMerica.

4

## I.    BHI, L.L.C. d/b/a Blountstown Health and Rehabilitation Center

22.    At all times relevant, BHI held the Medicare provider number and license for the skilled nursing facility known as Blountstown Health and Rehabilitation Center, located at 16690 SW Chipola Rd., Blountstown, Florida (the "Blountstown Facility").

23.    PharMerica and BHI entered into a Pharmacy Services Agreement, commencing on December 1, 2004, wherein PharMerica agreed to provide pharmacy goods and services to residents of the Blountstown Facility, and BHI agreed to pay for said goods and services (the "Blountstown Agreement").

24.    Upon information and belief, at all times relevant, Trefzger and Jones were members of BHI, or otherwise owned, operated or controlled BHI.

25.    At all times relevant, BHI retained Dominion Management Group, LLC ("DMG"), as its management company for the Blountstown Facility.

26.    Upon information or belief, on or about February 1, 2009, due to a dispute between BHI and DMG, BHI, with the assistance of Trefzger and Jones, allowed DMG, or one of its affiliates, including, but not limited to Dominion Healthcare Management, LLC ("DHM") and Dominion Healthcare Operator, LLC ("DHO") (collectively the "Dominion Entities"), to become the limited liability company manager of BHI.

27.    While BHI retains the licenses and Medicare provider number, the Dominion Entities are responsible for the Blountstown Facility's day-to-day operations beginning from February 1, 2009 to the present.

28.    Upon information and belief, BHI, Trefzger, and Jones, simply shifted all of BHI's financial risk (day-to-day profits and losses) to the Dominion Entities so that the

5

Dominion Entities assumed responsibility for all of BHI and the Blountstown Facility's finances, including the receipt of BHI's Medicare funds.

29.     BHI and the Dominion Entities still receive goods and services from PharMerica, directly or indirectly, pursuant to the Blountstown Agreement.

30.     PharMerica performed all obligations required of it under the Blountstown Agreement, as modified from time to time, submitted monthly invoices, and otherwise satisfied all conditions precedent to payment.

31.     Pursuant to the Blountstown Agreement and PharMerica's performance thereunder, BHI is obligated to pay for the services provided by PharMerica.

32.     Despite repeated demands for the sums due and owing under the Blountstown Agreement, BHI has failed and refused to pay for goods and services provided by PharMerica. The outstanding balance is accruing interest pursuant to the Blountstown Agreement.

33.     BHI, the Dominion Entities, and employees, agents or representatives of BHI and the Dominion Entities represented to PharMerica that the outstanding invoices would be paid and requested that PharMerica continue to provide goods and services in accordance with the Blountstown Agreement.

34.     PharMerica relied upon said representations in continuing to provide goods and services.

35.     Despite PharMerica's billing, repeated demands for the sums due and owing, and conferences regarding amounts outstanding, BHI has failed to pay for goods and services provided by PharMerica.

36.     BHI entered into the Blountstown Agreement and modifications with PharMerica and induced PharMerica to continue to provide goods and services with no intent of paying outstanding invoices or otherwise performing as required under the Blountstown Agreement.

37.     Upon information and belief, BHI has been reimbursed by Medicare for all or a significant portion of the goods and services provided by PharMerica, and BHI, Trefzger, and Jones, have directly or indirectly benefited from such reimbursement.

38.     Section 16(i) of the Blountstown Agreement provides that PharMerica may recover attorneys' fees for bringing an action under said agreement.

39.     BHI has failed to perform the payment obligations under the Agreement.

40.     As a result, PharMerica has incurred attorneys' fees and other costs in preparing and filing this action, all of which are the responsibility of BHI.

41.     PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of BHI.

## II.     LHI, L.L.C. d/b/a Lafayette Healthcare Center, CCHI, LLC d/b/a Cross City Health and Rehabilitation Center, PHI, L.L.C. d/b/a Crystal Oaks Nursing Home and Madison Health Investors, L.C. d/b/a Lake Park of Madison

42.     At all times relevant, LHI held the Medicare provider number and license for the skilled nursing facility known as Lafayette Healthcare Center, located at 215 W. Main St., Mayo, Florida (the "Lafayette Facility").

43.     At all times relevant, LHI Landlord owned the real estate for the Lafayette Facility, and leased it to LHI pursuant to a lease agreement between the parties.

44.     PharMerica and LHI entered into a Pharmacy Services Agreement, commencing on December 1, 2004, wherein PharMerica agreed to provide pharmacy goods and services to

7

residents of the Lafayette Facility, and LHI agreed to pay for said goods and services (the "Lafayette Agreement").

45.     At all times relevant, CCHI held the Medicare provider number and license for the skilled nursing facility known as Cross City Health and Rehabilitation Center, located at 583 North East 351 Highway, Cross City, Florida (the "Cross City Facility").

46.     At all times relevant, CCHI Landlord owned the real estate for the Cross City Facility, and leased it to CCHI pursuant to a lease agreement between the parties.

47.     PharMerica and CCHI entered into a Pharmacy Services Agreement, commencing on September 1, 2005, wherein PharMerica agreed to provide pharmacy goods and services to residents of the Cross City Facility, and CCHI agreed to pay for said goods and services (the "Cross City Agreement").

48.     At all times relevant, PHI held the Medicare provider number and license for the skilled nursing facility known as Crystal Oaks Nursing Home, located at 6767 88th Ave. North, Pinellas Park, Florida (the "Crystal Oaks Facility").

49.     At all times relevant, PHI Landlord owned the real estate for the Crystal Oaks Facility, and leased it to PHI pursuant to a lease agreement between the parties.

50.     PharMerica and PHI entered into a Pharmacy Services Agreement, commencing on December 1, 2004, wherein PharMerica agreed to provide pharmacy goods and services to residents of the Crystal Oaks Facility, and PHI agreed to pay for said goods and services (the "Crystal Oaks Agreement").

51.     At all times relevant, Madison held the Medicare provider number and license for the skilled nursing facility known as Lake Park of Madison, located at 1900 Country Club Rd., Madison, Florida (the "Madison Facility").

52.     At all times relevant, MHI Landlord owned the real estate for the Madison Facility, and leased it to Madison pursuant to a lease agreement between the parties.

53.     PharMerica and Madison entered into a Pharmacy Services Agreement, commencing on May 1, 2005, wherein PharMerica agreed to provide pharmacy goods and services to residents of the Madison Facility, and Madison agreed to pay for said goods and services (the "Madison Agreement").

54.     At all times relevant, Trefzger and Jones were members of LHI, CCHI, PHI and Madison, or otherwise owned, operated or controlled LHI, CCHI, PHI and Madison (collectively the "Trefzger Operators").

55.     At all times relevant, Trefzger and Jones were members of LHI Landlord, PHI Landlord, MHI Landlord, and CCHI Landlord (collectively the "Trefzger Landlords"), or otherwise owned, operated or controlled the Trefzger Landlords.

56.     Upon information and belief, as part of the lease agreements between them, the Trefzger Operators were obligated pay "rent" which covered, or more than covered, the debt service owed by the Trefzger Landlords on the notes for the real estate owned by each of the Trefzger Landlords.

57.     Upon information and belief, the Trefzger Operators are always current on their "rent" payments to the Trefzger Landlords, but not third-party creditors, such as PharMerica.

58.     Incredibly, the funds used to pay the "rent" is received from federal government (via Medicare Part A consolidated billing) that is based on the false representation (or implied misrepresentation) that the Trefzger Operators paid their under arrangement providers, such as PharMerica.

59.     At all times relevant, Trefzger and Jones were members of AgeMark and TSM, or otherwise owned, operated or controlled AgeMark and TSM.

60.     Upon information and belief, Trefzger and Jones used AgeMark and TSM to manage the Trefzger Operators or perform back office work, such as accounting, collections, and accounts payable, all of which were conducted out of Hickory, North Carolina.

61.     At all times relevant, AgeMark and TSM were aware of the Lafayette Agreement, the Cross City Agreement, the Crystal Oaks Agreement, and the Madison Agreement (collectively the "Agreements").

62.     PharMerica performed all obligations required of it under the Agreements, as modified from time to time, submitted monthly invoices, and otherwise satisfied all conditions precedent to payment.

63.     Pursuant to the Agreements and PharMerica's performance thereunder, the Trefzger Operators are obligated to pay for the services provided by PharMerica.

64.     Despite repeated demands for the sums due and owing under the Agreements, The Trefzger Operators have failed and refused to pay for goods and services provided by PharMerica.  The outstanding balance is accruing interest pursuant to the Agreements.

65.     As the parties in control of payment by the Trefzger Operators, Trefzger and Jones, via AgeMark and TSM, without justification, used their management and control to cause the Trefzger Operators to breach the Agreements by withholding payment from PharMerica and divert funds owed PharMerica's solely for Trefzger and Jones's gain, or to harm PharMerica.

66.     The Trefzger Operators, AgeMark, TSM, and employees, agents or representatives of the Trefzger Operators, AgeMark, and TSM represented to PharMerica that

the outstanding invoices would be paid and requested that PharMerica continue to provide goods and services in accordance with the Agreements.

67.     PharMerica relied upon said representations in continuing to provide goods and services.

68.     Despite PharMerica's billing, repeated demands for the sums due and owing, and conferences regarding amounts outstanding, the Trefzger Operators have failed to pay for goods and services provided by PharMerica.

69.     The Trefzger Operators entered into the Agreements and modifications with PharMerica and induced PharMerica to continue to provide goods and services with no intent of paying outstanding invoices or otherwise performing as required under the Agreements.

70.     Upon information and belief, the Trefzger Operators have been reimbursed by Medicare for all or a significant portion of the goods and services provided by PharMerica, and the Trefzger Operators, AgeMark, TSM, Trefzger Landlords, Trefzger and Jones have directly or indirectly benefited from such reimbursement.

71.     Pursuant to Section 6(c) of the Agreements, notwithstanding any provision regarding termination in the Agreements, the Trefzger Operators may not issue a written notice to terminate the Agreements if there are any payment amounts past due to PharMerica.  Section 6(c) further provides that any termination notice issued by the Trefzger Operators when there are payment amounts past due to PharMerica shall be void

72.     On or about August 1, 2009, PHI, via AgeMark and TSM, and at the direction of Trefzger and Jones breached the Crystal Oaks Agreement without justification by terminating said agreement while there were payment amounts past due to PharMerica.

11

73.     On or about December 1, 2009, LHI, CCHI, and Madison, via AgeMark and TSM, and at the direction of Trefzger and Jones, breached the Lafayette, Cross City and Madison Agreements without justification by terminating said agreements while there were payment amounts past due to PharMerica.

74.     At all times relevant, AgeMark, TSM, Trefzger and Jones knew of the Agreements and Section 6(c) of said agreements.  Nevertheless, they used their management and control to cause the Trefzger Operators to breach the Agreements by improperly terminating said agreements.

75.     Section 16(i) of the Lafayette and Crystal Oaks Agreements and Section 15(i) of the Cross City and Madison Agreements provide that PharMerica may recover attorneys' fees for bringing an action under the agreement.

76.     The Trefzger Operators have failed to perform the payment obligations under the Agreements and have otherwise breached the Agreements.

77.     As a result, PharMerica has incurred attorneys' fees and other costs in preparing and filing this action, all of which are the responsibility of the Trefzger Operators.

78.     PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of the Trefzger Operators.

### III.     Trefzger and Jones's Misuse of Their Entities

79.     Trefzger and Jones, so controlled and manipulated BHI, the Trefzger Operators, AgeMark, TSM, and Trefzger Landlords that they have become mere instrumentalities of Trefzger and Jones, and of each other, by among other things: (a) directing payment of insider debts, including AgeMark, TSM, Trefzger Landlords, and each other, before third-party creditors; (b) commingling funds; (c) sharing other assets without a corresponding exchange of

12

value; (d) intentional undercapitalization for the business in which they were engaged; (e) leveraging unprofitable locations (e.g., Crystal Oaks Facility) to ensure that the more profitable locations (e.g., Madison Facility) remain profitable and available to provide funds to Trefzger and Jones and other insiders; and (f) using BHI, the Trefzger Operators, AgeMark, TSM, Trefzger Landlords as business conduits for Trefzger and Jones (BHI, the Trefzger Operators, AgeMark, TSM, Trefzger Landlords, Trefzger, and Jones shall be collectively referred to hereafter as the "Trefzger Defendants").

80. Trefzger Defendants operate without respect for corporate formalities and in a manner that is inconsistent with their being separate and distinct legal entities, such that recognition of separate corporate entities would sanction a fraud or promote injustice, in that doing so allows the Trefzger Defendants to direct the payment of funds to insiders to the detriment of third-party creditors such as PharMerica.

81. Each Trefzger Defendant should be held jointly and severally liable for the obligations of all the Trefzger Defendants.

### COUNT I – BREACH OF CONTRACT FOR FAILURE TO PAY
(BHI, LHI, CCHI, PHI, AND MADISON)

82. PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 81.

83. Without legal justification or excuse, BHI, LHI, CCHI, PHI, and Madison materially breached the Pharmacy Services Agreements between each of said defendants and PharMerica by failing to pay the sums due and owing for the goods and services provided.

84. As a direct and proximate result of the breach of said, PharMerica has suffered damages for goods and services provided, none of which BHI, LHI, CCHI, PHI, and Madison have paid.

85.     Pursuant to the terms of the of the Pharmacy Services Agreements between each of said defendants and PharMerica, interest is accruing on the outstanding amounts owed at one and a half percent (1.5%) per month.

86.     Pursuant to Section 16(i) of the Blountstown, Lafayette, and Crystal Oaks Agreements and Section 15(i) of the Madison and Cross City Agreements, PharMerica is entitled to recover its attorneys' fees for bringing this action.

87.     PharMerica has also incurred attorneys' fees for bringing this action, and PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of BHI, LHI, CCHI, PHI, and Madison.

88.     PharMerica is entitled to recover damages in an amount to be proven at trial, including interest and attorneys' fees.

## COUNT II – BREACH OF CONTRACT FOR IMPROPER TERMINATION
### (LHI, CCHI, PHI, AND MADISON)

89.     PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 88.

90.     Section 6(c) of the Agreements provides that any termination is void if amounts are past due.

91.     The Trefzger Operators terminated the Agreements with PharMerica while amounts due and owing to PharMerica were past due.

92.     Said terminations were improper pursuant to the terms of the Agreements.

93.     As a result of the foregoing improper terminations, PharMerica suffered damages, including, but not limited to, lost profits under the Agreements.

14

94.     Pursuant to Section 16(i) of the Lafayette, and Crystal Oaks Agreements and Section 15(i) of the Madison and Cross City Agreements, PharMerica is entitled to recover its attorneys' fees for bringing this action.

95.     PharMerica has also incurred attorneys' fees for bringing this action, and PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of the Trefzger Operators.

96.     PharMerica is entitled to recover damages in an amount to be proven at trial, including interest and attorneys' fees.

<u>COUNT III – PROMISSORY ESTOPPEL</u>
(ALL DEFENDANTS EXCEPT THE TREFZGER LANDLORDS)

97.     PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 96.

98.     Defendants, directly or indirectly, made promises to PharMerica for the purpose of inducing it to continue providing goods and services to Defendants.

99.     PharMerica reasonably relied upon such promises made by Defendants and continued to provide goods and services to the residents of Defendants' skilled nursing facilities, for which it has not been paid.

100.    Based on information and belief, Defendants were aware of all material facts.

101.    Defendants' promises and PharMerica's reliance thereon resulted in detriment and damages to PharMerica.

102.    PharMerica is entitled to recover its damages from Defendants in an amount to be proven at trial.

## COUNT IV– UNJUST ENRICHMENT
### (ALL DEFENDANTS)

103.    PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 102.

104.    PharMerica has provided valuable goods and services to the residents of Defendants' skilled nursing facilities for which it has not been paid.

105.    PharMerica's goods and services were rendered under circumstances pursuant to which Defendants reasonably should have known that PharMerica would expect to be compensated.

106.    Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare for goods and services provided by PharMerica, directly or indirectly, and have wrongfully and intentionally withheld or will withhold such amounts from PharMerica.

107.    Consequently, Defendants have been unjustly enriched through the receipt of such goods, services and reimbursement, directly or indirectly, at the expense of PharMerica.

108.    Furthermore, Defendants have a legal and fiduciary duty to immediately remit proceeds received in reimbursements from Medicare to PharMerica if they have not timely paid invoices as required by the Pharmacy Services Agreements.

109.    For these reasons, a constructive trust should be imposed on any and all proceeds which have been, or hereafter are, received by Defendants as reimbursement by Medicare for pharmacy related goods and services provided by PharMerica, plus interest, costs, and attorneys' fees.

## COUNT V – ACCOUNT STATED
### (BHI, LHI, CCHI, PHI, AND MADISON)

110.     PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 109.

111.     Pursuant to the Pharmacy Services Agreements with PharMerica, BHI and the Trefzger Operators agreed to pay PharMerica for the goods and services it supplied to the residents of their skilled nursing facilities.

112.     PharMerica delivered invoices for goods and services rendered by PharMerica to BHI and the Trefzger Defendants.

113.     BHI and the Trefzger Defendants did not provide any written dispute of the outstanding charges on said invoices as required by the Pharmacy Services Agreements between the parties.

114.     Without justification, excuse or dispute of such invoices, BHI and the Trefzger Defendants have not paid PharMerica for the amounts invoiced.

115.     PharMerica is entitled to recover from BHI and the Trefzger Defendants damages in an amount to be proven at trial.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACTS
### (TREFZGER, JONES, AGEMARK, AND TSM)

116.     PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 115.

117.     Trefzger, Jones, AgeMark, and TSM knew of the Agreements between PharMerica and the Trefzger Operators.

118.     Trefzger and Jones, individually, and through AgeMark and TSM, intentionally and without justification, caused the Trefzger Operators to breach the Agreements with

17

PharMerica, including, but not limited to, the Trefzger Operators' failure to pay PharMerica and the improper terminations of the Agreements with PharMerica.

119.    As a direct and proximate cause of Trefzger, Jones, AgeMark and TSM's tortious interference, PharMerica has been damaged in an amount to be proven at trial, and Trefzger, Jones, AgeMark and TSM are liable for such damages, including, but not limited to, the amounts owed under the Agreements and PharMerica's lost profits.

## COUNT VII – FRAUDULENT CONVEYANCE
### (ALL DEFENDANTS)

120.    PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 119.

121.    At all times relevant, BHI and the Trefzger Operators (the "Facility Defendants") were insolvent in that (a) they could not pay their debts as they became due, or (b) their liabilities exceeded their assets.

122.    Upon information and belief, Trefzger, Jones, AgeMark and TSM used their management and control to transfer funds from the Facility Defendants, including, but not limited to Medicare funds that should have been used to pay PharMerica pursuant to federal law.

123.    Said transfers were made to or for the benefit of Trefzger, Jones, AgeMark, TSM and the Trefzger Landlords.

124.    As a result of these transfers, the Facility Defendants were rendered insolvent, to the extent they were not already insolvent.

125.    PharMerica's claims arose before the transfers.

126.    Said transfers were made without receiving reasonably equivalent value in exchange for the transfers.

127.    Said transfers were made to insiders and the insiders had reasonable cause to believe that Facility Defendants were or would become insolvent.

128.    The Facility Defendants, with the assistance of the Dominion Entities, Trefzger, Jones, AgeMark and TSM, made the transfers with actual intent to hinder, delay, or defraud their creditors.

129.    The Facility Defendants, with the assistance of the Dominion Entities, Trefzger, Jones, AgeMark and TSM, transferred the funds, including, but not limited to Medicare funds, which said transfers were made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Facility Defendants were engaged or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

130.    Pursuant to N.C. Gen Stat. § 39-23.1, *et seq.*, the transfers from the Facility Defendants made to the Dominion Entities, Trefzger, Jones, AgeMark, TSM, and the Trefzger Landlords were fraudulent as to PharMerica.

131.    PharMerica is entitled to all relief set out in N.C. Gen Stat. § 39-23.7 and North Carolina law from each Defendant.

## COUNT VIII – PIERCING THE CORPORATE VEIL
### (ALL DEFENDANTS)

132.    PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 131.

133.    Upon information and belief, the Facility Defendants, AgeMark, TSM and Trefzger Landlords are "alter egos" of one another and of Trefzger and Jones.

134.    Upon information and belief, the Facility Defendants, AgeMark, TSM and Trefzger Landlords are owned, operated, managed, or otherwise controlled in a manner by Trefzger and Jones which is inconsistent with their being separate and distinct legal entities.

135.    The Facility Defendants, AgeMark and TSM were so dominated and controlled by Trefzger and Jones, that each entity had not separate mind or existence of its own.

136.     To allow Trefzger, Jones, the Facility Defendants, AgeMark, TSM and Trefzger Landlords to assert limited liability because of the "corporate veil" would protect a fraud or promote injustice.

137.    Trefzger and Jones' misuse of the "corporate" structures of the Facility Defendants, AgeMark, TSM and Trefzger Landlords, directly and proximately caused injury to PharMerica by causing the Facility Defendants to either refuse or not be able to pay the amounts owed to PharMerica, to the benefit of Trefzger, Jones, the Trefzger Landlords, AgeMark and TSM.

138.    PharMerica is entitled to pierce the Facility Defendants, AgeMark, TSM and Trefzger Landlords' respective veils to recover from Trefzger, Jones, the Facility Defendants, AgeMark, TSM and Trefzger Landlords, jointly and severally, for the amounts owed by the Facility Defendants to PharMerica, including attorneys' fees as set forth in Counts I and II.

### COUNT IX – BREACH OF FIDUCIARY DUTY/ VIOLATION OF "TRUST FUND" DOCTRINE
#### (ALL DEFENDANTS EXCEPT THE TREFZGER LANDLORDS)

139.    PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 138.

140.    The Facility Defendants' assets, under North Carolina law, were a trust fund for the Facility Defendants' members and its creditors, such as PharMerica.

141.     Trefzger and Jones, at all times relevant, were members of the Facility Defendants, as well as the limited liability company managers, and thus each owed a fiduciary duty to PharMerica.

142.     AgeMark and TSM were the management companies for the Facility Defendants as well as mere instrumentalities of Trefzger and Jones.

143.     Due to AgeMark and TSM's domination and control over the Facility Defendants' assets, including Medicare funds belonging to PharMerica, AgeMark and TSM each owed a fiduciary duty to PharMerica.

144.     Due to mismanagement, or transfers to insiders or related companies, by Trefzger, Jones, AgeMark and TSM, the Facility Defendants were rendered insolvent in that either they were unable to pay their debts as they became due and/or their liabilities exceeded their assets.

145.     As trustees for the Facility Defendants' assets, Trefzger, Jones, AgeMark and TSM owed a fiduciary duty to first satisfy PharMerica's claims before any insiders.

146.     Trefzger, Jones, AgeMark and TSM breached their fiduciary duty to their PharMerica by transferring corporate assets to companies and entities owned and controlled by Trefzger and Jones, and otherwise structuring transfers for the explicit purpose of avoiding creditors' claims.

147.     PharMerica has been injured as a direct and proximate result of Trefzger, Jones, AgeMark and TSM's breach of fiduciary duty and violation of North Carolina law.  Moreover, as an under "arrangements" provider, and not just an ordinary creditor, the transfers of Medicare funds that should have been used to pay PharMerica pursuant to federal law, caused PharMerica to suffer an identifiable loss peculiar and personal to PharMerica.

148. PharMerica is entitled to recover from Trefzger, Jones, AgeMark and TSM for their breach of their respective fiduciary duties owed to PharMerica.

## COUNT X – UNFAIR AND DECEPTIVE TRADE PRACTICES
### (ALL DEFENDANTS)

149. PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 148.

150. The allegations contained in the all other paragraphs of this Complaint are incorporated herein by reference.

151. Upon information and belief, the acts and practices alleged hereinabove as to the Defendants were acts in or affecting commerce.

152. Upon information and belief, the acts and practices alleged hereinabove as to the Defendants were unfair or deceptive as to Plaintiff within the meaning of the language of N.C. Gen. Stat. §75-1.1.

153. Upon information and belief, as a direct and proximate result of the above-described unfair and deceptive act and practices of the Defendants, the Plaintiff has been damaged in an amount to be proven at the trial of this cause.

154. In addition, upon information and belief, the Plaintiff is entitled to treble damages as provided in N.C. Gen. Stat. §75-16, together with reasonable attorney's fees as provided in N.C. Gen. Stat.§75-16.1.

## COUNT XI – PUNITIVE DAMAGES
### (ALL DEFENDANTS)

155. PharMerica incorporates by reference each and every allegation set forth in Paragraphs 1 through 154.

159. In the alternative, as described more fully hereinabove, the Defendants have, upon information and belief, intentionally, willfully, wantonly, and without regard to Plaintiff's rights, caused injury to the Plaintiff.

160. Accordingly Plaintiff to punitive damages in accordance with N.C. Gen. Stat. § 1D-15.

WHEREFORE, PharMerica requests judgment against Defendants as follows:

A. An award of damages in an amount to be proven at trial, with such damages to be trebled pursuant to N.C. Gen. Stat. §75-16 ;

B. In the alternative, an award of punitive damages in favor of the Plaintiff against Defendants;

C. PharMerica's costs, expenses and attorneys' fees associated with prosecution of this action as allowable by law including, without limitation, N.C. Gen. Stat. §75-16.1;

D. The imposition of a constructive trust on sums received by Defendants as Medicare reimbursement for pharmacy related goods and services provided by PharMerica and not paid for by Defendants;

E. Pre-judgment and post-judgment interest;

F. Trial by jury; and

G. All other relief to which PharMerica may be entitled.

Dated: April 21, 2010                    Respectfully submitted,


                                         /s/ James C. Lanik_____
                                         James C. Lanik, NCSB #30454
                                         Christopher C. Finan NCSB # 27820
                                         ROBERSON, HAWORTH & REESE, PLLC.
                                         High Point Bank & Trust Company Building
                                         Suite 300
                                         300 North Main Street,
                                         PO Box 1550
                                         High Point, North Carolina 27261
                                         (336) 889-8733
                                         (336)885-1280

                                         - and -



                                         *Of counsel*
                                         Benjamin C. Fultz
                                         Jennifer Metzger Stinnett
                                         Chacey R. Ford
                                         FULTZ MADDOX HOVIOUS & DICKENS PLC
                                         101 S. Fifth St., Suite 2700
                                         Louisville, Kentucky 40202
                                         (502) 588-2000
                                         (502)588-2020
                                         BFultz@fmhd.com
                                         JStinnett@fmhd.com
                                         CFord@fmhd.com
                                         *Counsel for Plaintiff*